# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELLENIC PETROLEUM, LLC, a Florida limited liability company,<br><br>Plaintiff<br><br>v.<br><br>SACRAMENTO ENERGY RESOURCES, LLC, a Texas limited liability company, BETH JOHNSON, CLIFFORD KAST, and DOES 1-20,<br><br>Defendants | CASE NO. 1:19-CV-0491 AWI SAB<br><br>ORDER ON DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. No. 13) |

This is a business dispute between Plaintiff Hellenic Petroleum, LLC ("Hellenic") and Defendants Sacramento Energy Resources, LLC ("SER"), Beth Johnson ("Johnson"), and Clifford Kast ("Kast"). Hellenic brings claims under California law for declaratory relief, trade libel, negligent interference with prospective economic advantage ("NIPEA"), misrepresentation, and unfair competition in violation of Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). The active complaint is the First Amended Complaint ("FAC"). Currently before the Court is Defendants' Rule 12(b)(6) motion to dismiss. For the reasons that follow, the motion will be granted in part and denied in part.

## **RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the

plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or

matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

**BACKGROUND**

From the FAC, it appears that Hellenic and SER entered into an agreement for the sale and delivery of propane. Part of the deal for the propane was a delivery limit from SER to Hellenic of $200,000 of propane. This limit was agreed to by Johnson. Despite that limit, SER at Kast's direction has sent $1.2 million of propane to Hellenic since December 2018. The delivery of this amount of propane was without Hellenic's consent, and Hellenic refuses to pay SER $1.2 million for the propane. The over-supply of propane created financial pressure on Hellenic.

In February 2019, "Defendants" removed at Kast's direction nine railway cars of propane from Hellenic's facility without Hellenic's prior knowledge or permission. The bills of lading for the nine railroad cars identified Hellenic as a "cosignee," which meant that Hellenic was required to "sign off" on any removal of the nine railroad cars. In order to remove the nine railroad cars, Defendants made fraudulent misrepresentations regarding their authority or permission to remove the cars.

Additionally, "Defendants" have made statements in the marketplace to disparage Hellenic. "Defendants" have made statements about Hellenic being untrustworthy and refusing to honor a contract to pay for propane, even though Hellenic never agreed to receive $1.2 million of propane. These statements have caused Hellenic financial loss.

From these allegations, Hellenic seeks declaratory relief and damages through trade libel, NIPEA, misrepresentation, and the UCL.

**DEFENDANTS' MOTION**

**1.     First Cause of Action – Declaratory relief**

*Parties' Arguments*

Defendants argue that the claim for declaratory relief fails because there are no allegations of a written or oral agreement between the parties. In fact, the FAC specifically alleges that there was no agreement between the parties. Thus, there is no plausible claim stated.

Hellenic argues the FAC does allege a dispute regarding the delivery of propane which is alleged to be in violation of an agreement. That is sufficient to support a claim for declaratory relief.

*Legal Standard*

In California, "declaratory relief is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." Meyer v. Sprint Spectrum LP, 45 Cal.4th 634, 648 (2009). In relevant part, Cal. Code. Civ. P. § 1060 provides: "Any person interested under a . . . contract . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . in the superior court . . . for a declaration of his or her rights and duties . . ., including a determination of any question of construction or validity arising under the . . . contract." A complaint for declaratory relief must demonstrate a proper subject for declaratory relief (as set forth in § 1060 and other statutes) and an actual controversy involving justiciable questions relating to the rights or obligations of a party. Sweetwater Union High Sch. Dist. v. Julian Union Elementary Sch. Dist., 36 Cal. App. 5th 970, 984 (2019); Brownfield v. Daniel Freeman Marina Hosp., 208 Cal.App.3d 405, 411 (1989). "The 'actual controversy' requirement concerns the existence of a present controversy relating to the legal rights and duties of the respective parties pursuant to contract [§ 1060], statute, or order." Sweetwater Union, 36 Cal.App.4th at 984; Brownfield, 208 Cal.App.3d at 410.

*Discussion*

Here, the FAC provides little detail. However, it can be reasonably inferred, see Kwan, 854 F.3d at 1096; TrachtGut, LLC v. L.A. Cnty. Treasurer & Tax Collector, 836 F.3d 1146, 1150

(9th Cir. 2016), that Hellenic entered into a contract/agreement with SER for the purchase of not more than $200,000 worth of propane.[1]  Despite this limit, $1.2 million of propane was sent to Hellenic and there is a dispute about how much, if anything, Hellenic owes to SER for the delivered propane.  Additional terms of the agreement are unknown, as is the very form of the agreement (oral or written).[2]  Nevertheless, the minimal allegations in the FAC are sufficient to indicate that there exists an on-going dispute regarding the obligations of the parties to a contract/agreement for the provision of propane.  That is sufficient to allege a plausible claim with respect to SER.  See Cal. Code Civ. P. § 1060; Sweetwater Union, 36 Cal.App.4th at 984.  Therefore, dismissal of the claim for declaratory relief regarding $1.2 million of propane is inappropriate.

However, the allegations under the declaratory relief cause of action are not limited to the delivery of $1.2 million of propane.  Hellenic also alleges that Defendants fraudulently removed nine railway cars of propane from Hellenic's railyard.  The significance of this allegation under this cause of action is unclear.  Hellenic does not allege that the removal of the nine railway cars was done pursuant to the contract/agreement with SER for the provision of propane.  The allegation indicates that Defendants have committed a tort, not that there is a dispute as to rights or obligations under a contract.  Without an allegation that ties the removal of the nine railway cars to obligations under a contract, removal of the railway cars does not support a viable claim for declaratory relief.  See Sweetwater Union, 36 Cal.App.4th at 984; Brownfield, 208 Cal.App.3d at

---

[1] The Court recognizes that the FAC contains a common boilerplate allegation that all defendants were each other's agents.  However, when entities are involved in a transaction, the negotiations are conducted by the entities' respective agents.  Generally, any resulting agreement is legally between the entities, not between the agents.  Cf. Filippo Inustries, Inc. v. Sun Ins. Co., 74 Cal.App.4th 1429, 1442-43 (1999) (holding that agent is not liable on a contract when he acts for a disclosed principal and does not exceed his authority).  As such, it is reasonable and plausible to infer that the agreement described in the first cause of action is between Hellenic and SER.  However, in the absence of an express allegation that identifies the actual relationship between the individuals and SER, and that explains how Kast and Johnson can enforce the agreement in an individual/non-representative capacity, it cannot be reasonably inferred that Kast and Johnson are parties to the agreement in an individual capacity.  Without allegations that plausibly show that Kast and Johnson can individually enforce the agreement, there is no basis to include them under the claim for declaratory relief.

[2] The Court notes that declaratory relief is available for both written and oral contracts.  See Columbia Pictures Corp. v. De Toth, 26 Cal.2d 753, 760 (1945) (oral contract); Shaw v. Regents of U. of Cal., 58 Cal.App.4th 44, 52 (1997) (written contract); Zimmer v. Gorelink, 42 Cal.App.2d 440, 445 (1941) (holding that § 1060 applies to oral and written contracts).

410. To the extent that the allegation regarding the removal of the nine railway cars is meant to support a claim for declaratory relief, dismissal is appropriate. See id.

### 2. Second Cause of Action – Trade Libel

*Parties' Arguments*

Defendants argue that the allegations for trade libel are conclusory and merely track the elements of the tort. Further, the disparaging comment did not involve a reference to Hellenic's products or services, rather, it was a mere reference to its business and payment practices.

Hellenic argues that the FAC alleges that Defendants made disparaging statements with respect to Hellenic's business and payment practices and said that Hellenic is untrustworthy and refuses to honor a contract to pay for propane. Hellenic argues that Defendants' statements affect the market's perception of the services that Hellenic provides, as it is in the business of supplying fuel to customers. Alternatively, if the claim is not considered trade libel, it should be considered defamation.

*Legal Standard*

"Trade libel" has been defined as the "intentional disparagement of the quality of services or product of a business that results in pecuniary damage to the plaintiff."[3] J-M Mfg. Co, Inc. v. Phillips & Cohen LLP, 247 Cal.App.4th 87, 97 (2016). "Disparagement" consists of "injurious falsehoods that interfere with business," and unlike the tort of defamation, is "not directed at the plaintiff's personal reputation, but rather at the goods a plaintiff sells or the character of his other business." Aetna Cas. & Sur. Co. v. Centennial Ins. Co., 838 F.2d 346, 351 (9th Cir. 1988); Guess, Inc. v. Superior Ct., 176 Cal.App.3d 473, 479 (1986); see Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal.4th 277, 289 (2014). "Trade libel" may consist of a publication of matter that is derogatory to the plaintiff's title to his property, or its quality, or to his business in general." Atlantic Mutual Ins. Co. v. J. Lamb, Inc., 100 Cal.App.4th 1017, 1035 (2002); Nichols v. Great Am. Ins. Cos., 169 Cal.App.3d 766, 773 (1985); Erlich v. Etner, 224 Cal.App.2d 69, 73 (1964); see also Hartford, 59 Cal.4th at 289-91. "[C]ourts have required that the defendant's false or

---
[3] "'[C]ommercial disparagement,' 'injurious falsehood,' 'product disparagement,' 'trade libel,' 'disparagement of property,' and 'slander of goods,'" are names that have been given to the same tort by various courts over the years. Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal.4th 277, 289 (2014)

misleading statement have a degree of specificity that distinguishes direct criticism of a competitor's product or business from other statements extolling the virtues or superiority of the defendant's product or business." Hartford, 59 Cal.4th at 291. Statements that consist of merely loose, figurative, or hyperbolic language, as well as statements that are mere puffery or the expression of opinion, will not constitute "disparagement." See Aerosonic Corp. v. Trodyne Corp., 402 F.2d 223, 231 (5th Cir. 1968); Hanford, 59 Cal.4th at 299; ComputerXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 1010-11, 1014 (2001). Additionally, the plaintiff must show it actually suffered some pecuniary loss. See J-M Mfg., 247 Cal.App.4th at 97; Mann v. Quality Old Time Service, Inc., 120 Cal.App.4th 90, 109 (2004);[4] Erlich, 224 Cal.App.2d at 73. Generally, a plaintiff must identify the particular customers and transactions lost in order to show the specific pecuniary injury suffered from the defendant's disparaging statements. See Mann, 120 Cal.App.4th at 109; Erlich, 224 Cal.App.2d at 73-74.

*Discussion*

Hellenic's trade libel claim fails for at least two reasons.

First, the pecuniary loss required to support a claim of trade libel is considered to be "special damages." Leonardini v. Shell Oil Co., 216 Cal.App.3d 547, 572 (1990). As such, the heightened pleading standard of Rule 9(g) applies to the damages suffered from a trade libel. See Fed. R. Civ. P. 9(g) ("If an item of special damages is claim, it must be specifically stated."); Youngevity Int'l Corp. v. Smith, 2017 U.S. Dist. LEXIS 205980, *31 (S.D. Cal. Dec. 13, 2017); Piping Rock Partners, Inc. v. David Lerner Assocs., 946 F.Supp.2d 957, 981 (N.D. Cal. 2013). To meet this standard, the FAC was required to identify the particular customers and transactions lost as a result of Defendants' disparaging statements. See Youngevity, 2017 U.S. Dist. LEXIS 205980 at *31; Piping Rock, 946 F.Supp.2d at 981; Mann, 120 Cal.App.4th at 109. However, the FAC merely alleges, on information and belief, that it "suffered direct financial harm." FAC ¶ 21. That does not meet Rule 9(g)'s requirements. See id.

Second, the disparaging statement identified in the FAC is about "[Hellenic's] alleged untrustworthiness and refusal to honor a contract to pay for propane." FAC ¶¶ 17, 18. The Court

---
[4] Disapproved on other grounds by Baral v. Schnitt, 1 Cal.5th 376 (2016).

7

takes the allegation to mean that Defendants have said that Hellenic is untrustworthy because it did not honor a contract to buy propane from SER. Hellenic does not argue that the statement reflects necessarily on the goods it sells, rather, Hellenic argues that the statement reflects on its services. See Doc. No. 15 at 7:19-22. However, there is nothing about any service provided by Hellenic that is reflected in the statement. The statement focuses on a specific transaction with Defendants for Hellenic to purchase propane. In that scenario, Defendants are providing a good (propane) and a service (delivery of propane) to Hellenic. That is, Hellenic is a purchaser, not a purveyor of any good or service. Contrary to its argument, Hellenic has not demonstrated that the alleged statements disparage its services. Because Hellenic's theory of trade libel as the disparagement of its services is not supported by the allegations, no plausible claim is stated and dismissal is appropriate.

### **3.**    **Third Cause of Action – NIPEA**

*Parties' Arguments*

Defendants argue that the FAC alleges intentional conduct, not negligence, and fails to identify any duty of care owed by Defendants to Hellenic. Further, the FAC alleges that two acts by Defendants caused harm, over-supplying Hellenic with propane and removing propane from Hellenic's railyard. However, these allegations are irrational; either Hellenic wanted propane or it did not. Hellenic cannot be offended both by the delivery of propane it did not want and its removal.

Hellenic argues that there are no inconsistencies regarding negligent interference. Defendants sought to unlawfully overwhelm its finances and facilities, then sought to unlawfully interfere with its operations, and then spread libelous information regarding the same. Alternatively, if the allegations support a claim for intentional interference with prospective economic advantage, then the claim can be viewed as such.

*Legal Standard*

Torts of interference with prospective economic advantage impose "impose liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." Golden Eagle Land Investment, LP v. Rancho Santa

Fe Assn., 19 Cal.App.5th 399, 429 (2018).  The elements of a claim for NIPEA are:  "(1) the existence of an economic relationship between the plaintiff and a third party containing the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care; (4) the defendant's failure to act with reasonable care; (5) the defendant engaged in wrongful conduct; (6) actual disruption of the relationship; (7) and economic harm proximately caused by the defendant's negligence.  See Redfearn v. Trader Joe's Co., 20 Cal. App. 5th 989, 1005-06 (2018); Verhaus v. Shultz, 155 Cal.App.4th 1072, 1077-78 (2007).  With respect to the third and fourth elements regarding reasonable care, NIPEA "arises only when the defendant owes the plaintiff a duty of care." Limandri v. Judkins, 52 Cal.App.4th 326, 348 (1997); see Golden Eagle, 19 Cal.App.5th at 430. With respect to the fifth element, the wrongful conduct must be "independently wrongful," that is, "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  Edwards v. Arthur Andersen LLP, 44 Cal.4th 937, 944 (2008); Redfearn, 20 Cal.App.5th at 1006.

    *Discussion*

    Hellenic argues that Defendants were under a duty of care that had been created by the agreement to buy and deliver propane.  As discussed above, it reasonably can be inferred from the FAC that Hellenic and SER entered into a contract for the sale and delivery of propane.  In California, "a contract to perform services gives rise to a duty of care which requires that such services be performed in a competent and reasonable manner.  A negligent failure to do so may be both a breach of contract and a tort."  North Am. Chemical Co. v. Superior Ct., 59 Cal.App.4th 764, 774 (1997); see also Holguin v. Dish Network LLC, 229 Cal.App.4t h 1310, 1324 (2014). Propane is a good, but delivering the propane is a service.  Therefore, under *North Am.* and *Holguin*, SER was under an obligation to competently deliver the propane.

    Accepting this duty, there are problems with this cause of action.  The unreasonable conduct that the FAC identifies is the disruption of Hellenic's propane supplies through the delivery of excess propane *and* the removal of nine railway cars of propane.  Assuming that

delivering $1.2 million of propane (which exceeds the $200,000 limit) is not a competent delivery, the removal of the railway cars is separate from the delivery of propane. Although the allegations are sparse, the FAC suggests that removal occurred after the delivery obligation had been met. That is, at the time of removal, all performance under the agreement had already occurred, even if performance was unreasonable. Hellenic does not explain how the removal of the railway cars implicates any existing duty that was owed by Defendants. Hellenic also does not separate the harms caused by oversupply from the harms caused by removal of the nine railway cars. Therefore, the act of "disruption of supply" by Defendants does not implicate a duty owed to Hellenic because only one of the two acts that form the disruption is covered by a duty created by the agreement at issue. Without a duty that is owed to Hellenic by Defendants that covers the conduct alleged to be unreasonable, no plausible claim is stated.

Additionally, the Court agrees with Defendants that there is tension in the allegations regarding supply and removal. The Court accepts that Hellenic did not authorize the delivery of $1.2 million of propane. However, if Hellenic did not authorize the delivery of that quantity of propane, it is unclear why the removal of the nine railway cars was problematic. It would seem that SER is simply taking back the excess propane that it had delivered to Hellenic. It is possible that propane from sources other than Defendants was removed as part of the nine railway cars, or it is possible that some portion of the nine railway cars contained a quantity of propane that was within the $200,000 limit that had been set by the parties. If that is the case, both harm and unreasonableness would be clear. However, there are no such allegations. The bottom line is that without further factual allegations, there is simply a contention of oversupply and removal. If Hellenic did not authorize the delivery of $1.2 million of propane, then Defendants taking the propane back is not necessarily wrongful or unreasonable or even harmful. Further allegations are necessary to show how or why the removal was improper, unreasonable, and harmful.

In sum, the allegations do not plausibly demonstrate a duty owed by the Defendants to Hellenic that would encompass the conduct at issue. Further, the unreasonableness and harmfulness of the removal of the railway cars is unclear. Therefore, no plausible claim is stated and dismissal is appropriate.

### **4.** **Fourth Cause of Action – Misrepresentation**

*Parties' Arguments*

Defendants argue that the claim for misrepresentation fails because the FAC does not identify what the misrepresentation was or to whom it was made. The California pleading standard for fraud requires particularity, and the FAC does not provide the necessary specifics.

Hellenic argues that the FAC satisfies the California particularity requirements. The how, what, when, where, and to who the misrepresentations were made.

*Legal Standard*

The elements of fraud or intentional misrepresentation are: (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage. See Conroy v. Regents of U. of Cal., 45 Cal.4th 1244, 1256 (2009); Cohen v. Kabbalah Centre Int'l, Inc., 35 Cal.App.5t h 13, 20 (2019); Daniels v. Select Portfolio Servicing, Inc., 246 Cal.App.4th 1150, 1166 (2016). Claims of fraud must be pled with particularity and meet Rule 9(b)'s heightened pleading standard, meaning that the "who, what, when, where, and how" of the fraud, as well as what is false or misleading about the fraudulent statement and why it is false, must all be alleged.[5] Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1184 (9th Cir. 2016). Additionally, when the defendant is an entity, a complaint generally must also identify the person who made the false representations on behalf of the entity. See United States ex. Lee v. SmithKline Beecham, 245 F.3d 1048, 1051 (9th Cir. 2001); White v. J.P. Morgan Chase, Inc., 167 F.Supp.3d 1108, 1115 (E.D. Cal. 2018); Griffin v. Lending Tree Servicing, LLC, 166 F.Supp.3d 1030, 1057-58 (C.D. Cal. 2015).

---

[5] The Court notes that the parties cite to and rely on pleading requirements of California state law. Such reliance, although not uncommon, is improper. The Federal Rules of Civil Procedure, not the California Code of Civil Procedure, govern all actions in federal court, irrespective of the source of subject matter jurisdiction. See Fed. R. Civ. P. 1; Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009); United States use of Acme Granite & Tile v. F.D. Rich Co., 441 F.2d 1143, 1144 (9th Cir. 1971).

*Discussion*

The FAC contains allegations that adequately identify several necessary specifics of the Defendants' fraud. The "what" of the misrepresentation is that "Defendants" misrepresented that they had authority to remove nine railroad cars of propane from Hellenic's facility. The representation was false because in order to have had the authority to remove the nine railway cars, Defendants would have had to have had Hellenic's permission and they did not. The "where" is reasonably inferred to be Hellenic's railyard. Although the FAC does not expressly allege where the misrepresentations occurred, the FAC does allege that Hellenic's agents and railway agents relied on the misrepresentations. It is reasonable to infer that the railway agents were actually at the railyard and thus, that the misrepresentations actually occurred at the railyard.

However, not all of the necessary specifics are identified by the FAC. The "how" is not alleged. Given the other allegations, the misrepresentations could have been oral, written, or both. The complaint loosely identifies the "when" as February 2019, but given the nature of the misrepresentation, a more specific timeframe should be known to Hellenic. The "who" is not adequately identified for several reasons. First, the FAC improperly lumps SER and Kast together by making allegations against "Defendants." Lumping all "Defendants" together is improper. See United Healthcare, 848 F.3d at 1184. Second, SER is a business entity. As such, Hellenic must either name the agents/employees of SER who made the misrepresentations or at least attempt to describe or identify those agents/employees as best it can. See SmithKline Beecham, 245 F.3d at 1051; White, 167 F.Supp.3d at 1115; Griffin, 166 F.Supp.3d at 1057-58. Third, although Kast is alleged to have directed the removal of the railway cars, there are no allegations that actually tie Kast to the misrepresentations. Hellenic needs to make allegations that show how Kast is either directly or vicariously liable for the *misrepresentations*, not simply that he directed the repossession of the nine railway cars. Finally, although not argued with respect to this cause of action, as discussed above, it is not clear why the removal of the nine railway cars was harmful. The removal appears to be related to the oversupply of unwanted propane. It is unclear why removing/taking back the unwanted and unauthorized shipment of propane would cause harm.

In sum, because Rule 9(b)'s standards have not been met, dismissal is appropriate.

12

## **5.** **Fifth Cause of Action – Unfair Competition**

*Parties' Arguments*

Defendants argue that the UCL claim fails because the FAC does not identify any section of the statutory scheme that has been violated.

Hellenic argues that Defendants' view of the UCL is too narrow. Hellenic clarifies that its UCL claims is derivative of each of the other claims alleged in the FAC. Insofar as any other claims are allowed to proceed, the UCL should also proceed.

*Legal Standard*

The UCL broadly proscribes the use of any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code. § 17200; Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1177 (9th Cir. 2016). "The UCL operates as a three-pronged statute: 'Each of these three adjectives [unlawful, unfair, or fraudulent] captures a 'separate and distinct theory of liability.'" Beaver, 816 F.3d at 1177 (quoting Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010)).

"A business practice is 'fraudulent' under the UCL if members of the public are likely to be deceived." Davis v. HSBC Bank, 691 F.3d 1152, 1169 (9th Cir. 2012); Puentes v. Wells Fargo Home Morg., Inc., 160 Cal.App.4th 638, 645 (2008). Unless a particular disadvantaged or vulnerable group is targeted, whether conduct is "fraudulent" is judged the effect the conduct would have on a reasonable consumer. Puentes, 160 Cal.App.4th at 646.

The UCL's "unlawful" prong "borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL," and that "virtually any law or regulation – federal or state, statutory or common law – can serve as a predicate . . . ." Candelore v. Tinder, Inc., 19 Cal.App.5th 1138, 1155 (2018). When the underlying legal claim that supports a UCL claim fails, "so too will the [the] derivative UCL claim." AMN Healthcare, Inc. v. Aya Healthcare Services, Inc., 28 Cal.App.5th 923, 950 (2018); see also Krantz v. BT Visual Images, LLC, 89 Cal.App.4th 164, 178 (2001).

California law with respect to "unfair" conduct is currently "in flux." Hodsdon v. Mars, Inc., 891 F.3d 857, 866 (9th Cir. 2018). Conduct is "unfair" either when it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects

1 are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition," or when it "'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Id.

*Discussion*

Hellenic's opposition clarifies that its UCL claims is dependent upon his other causes of action. Based on the definitions of "unfair," "fraudulent," and "unlawful" for purposes of the UCL, Hellenic appears to be pursuing only an "unlawful" UCL claim. The Court has found that dismissal of the substantive causes of action is proper. Because these causes of action fail, so too fails the UCL claim.[6] See AMN Healthcare, 28 Cal.App.5t h at 950; Krantz, 89 Cal.App.4th at 178.

### **6.** **Punitive Damages**

*Parties' Arguments*

Defendants argue that the request for punitive damages is insufficient because there is only an insufficient bare allegation that Defendants acted with malice, fraud, or oppression.

Hellenic argues that the FAC alleges that Defendants actions were performed with malice, fraud, or oppression and with the intent to cause injury to Hellenic. Thus, the allegations are sufficient to support punitive damages.

*Discussion*

Punitive damages are "merely an additional remedy that [are] dependent on a viable cause of action for an underlying tort." 569 E. County Blvd. LLC v. Backcountry Against the Dump, Inc., 6 Cal.App.5th 426, 430 n.3 (2016). Because there are no viable tort claims alleged, dismissal of the punitive damages request is appropriate.[7]

---

[6] The Court is unaware of any authority holding that a claim for declaratory relief under Cal. Code Civ. P. § 1060 may form the basis of a UCL "unlawful" claim.

[7] The Court notes that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). While there is no heightened pleading standard under Rule 9(b) for punitive damages, the allegations that request and support punitive damages must still meet the requirements of Rule 8 and *Iqbal*, i.e. the factual allegations must indicate a plausible basis for punitive damages. See Mayfield v. NASCAR, 674 F.3d 369, 377 (4th Cir. 2012); Coppola v. Smith, 982 F.Supp.2d 1133, 1144-45 (E.D. Cal. 2013).

14

### **7.** **Allegations Involving Individual Defendants Kast and Johnson**

*Parties' Arguments*

Defendants argue that the FAC is almost completely devoid of any facts relating to Johnson and Kast that could support any liability. Johnson is only mentioned as having authorized a $200,000 delivery limit, and there are no facts that elaborate or give context to the delivery limit. Similarly, Kast is alleged to have directed the delivery of propane to Hellenic and to have directed the removal of nine railway cars of propane without Hellenic's consent. These facts do not state plausible claims.

Hellenic argues that there are specific allegations against Johnson and Kast. Johnson agreed to the $200,000 limit on propane deliveries and Kast authorized additional deliveries of propane to Hellenic and the removal of the nine railway cars. Additionally, the references to "Defendants" in the FAC are a reference to SER, Johnson, and Kast.

*Discussion*

Hellenic admits that it has lumped SER, Kast, and Johnson together and alleged acts of misconduct against "Defendants" without necessarily differentiating any individual's conduct. Through Footnote 1, the Court has explained that it does not view any plausible claim against Kast and Johnson with respect to declaratory relief because there are no allegations that explain how they can individually enforce the agreement. Further, the Court has also explained that additional facts are needed to tie Kast to the misrepresentations identified under the cause of action for misrepresentation.

With respect to the trade libel claim, it is a reasonable reading of the FAC that Hellenic is alleging that each Defendant made statements that Hellenic was untrustworthy because it did not honor its agreement with SER for the purchase and delivery of propane. If Hellenic does not believe that each Defendant made such a statement, then the trade libel claim should not be alleged against each defendant (or Hellenic should explain that a specific defendant's liability is somehow vicarious). Similarly, if Hellenic is aware of specific statements made by specific Defendants, then those specific statements should be alleged and attributed to the appropriate speaker. Otherwise, the Court is satisfied that Kast and Johnson have adequate notice of their

15

individual conduct for purposes of trade libel.[8]

With respect to the NIPEA claim, as discussed above, the conduct at issue was the disruption of Hellenic's distribution of propane to its customers through acts of oversupply and removal of railway cars. Lumping all defendants together in this cause of action is problematic. The removal of the nine railway cars is addressed in some depth under the Court's analysis of the misrepresentation claim. That claim is alleged only against Kast and SER, not Johnson. Given this limitation, and the absence of any specific allegations regarding Johnson's relationship to either Kast or SER or to her specific involvement with the nine railway cars, the FAC does not plausibly tie Johnson to the removal of the railway cars. Also, while Johnson is alleged to have agreed to the $200,000 limit of propane, there are no allegations that actually tie her to any responsibility for the oversupply. Negotiating a contract on behalf of a principal is different from the principal's actual performance of the contract. Thus, the FAC does not plausibly tie Johnson to any acts of oversupply. The situation is different with respect to Kast. The allegations indicate that Kast authorized the delivery of $1.2 million of propane and ordered the removal of the propane. That is sufficient to tie Kast to the oversupply and removal.[9]

With respect to the UCL claim, as a derivative claim, the above analyses apply to Hellenic's UCL claim against Kast and Johnson.

**8.** **Leave To Amend**

Permitting a party leave to amend in connection with a first Rule 12(b)(6) motion is the default. See Ebner, 838 F.3d at 962. Contrary to Defendants' arguments, the Court cannot conclude at this time that amendment would be futile. Thus, the Court will follow the default rule and dismiss Hellenic's claims with leave to amend.

As part of the opposition, Hellenic states that its NIPEA claim may be construed as an intentional interference claim and that its trade libel claim may be construed as a defamation

---

[8] The Court reiterates that it has not found a plausible trade libel claim. Because the plausibility of the claim as a whole is a separate issue from whether each defendant has adequate notice of the claims against them and the conduct attributed to them, the Court addresses the allegations with respect to Kast and Johnson.

[9] Again, that the allegations may tie Kast to the NIPEA claim does not change the fact that no plausible NIPEA has been alleged.

16

claim.  However, the claims at issue are those that are actually pled in the FAC.  The FAC's causes of action are clearly entitled, generally follow the applicable CACI jury instructions, and were alleged by an attorney.  There is simply no basis to view the FAC as alleging anything other than the claims that are expressly identified, trade libel and NIPEA.  Nevertheless, Hellenic's arguments are not necessarily unreasonable in that the circumstances described in the FAC seem more consistent with claims of defamation and intentional interference.[10]  Therefore, if Hellenic chooses to amend its complaint, it may replace its trade libel and NIPEA claims with those of defamation and intentional interference, or it may add defamation and intentional interference claims.

Additionally, Defendants are correct to argue that there are many conclusory allegations that track the elements of a claim and relatively few factual allegations.  The key to stating plausible claims is to include factual allegations, conclusory allegations that merely track elements are insufficient.  See Iqbal, 556 U.S. at 678; Levitt, 765 F.3d at 1135; Somers, 729 F.3d at 959.  To make the claims and contentions of Hellenic clearer, any amended complaint should include additional factual allegations that identify the nature of the dispute and the relationship between the parties, and that support the claims asserted.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss (Doc. No. 13) is DENIED with respect to the first cause of action based on the alleged oversupply of propane;

2. Defendants' motion to dismiss (Doc. No. 13) is otherwise GRANTED and all other claims are DISMISSED with leave to amend;

3. Within twenty-one days (21) of service of this order, Plaintiff shall file an amended complaint consistent with this order;

---

[10] This statement is a general observation and is not to be construed as the Court prohibiting Hellenic from attempting to pursue trade libel and defamation claims.

4. If Plaintiff does not file a timely amended complaint, then leave to amend will be automatically withdrawn without further order and Defendants shall file an answer within twenty-eight (28) days of service of this order.

IT IS SO ORDERED.

Dated: September 30, 2019

_____
SENIOR DISTRICT JUDGE